No. 3666

Second Circuit

SMITHSON v. JONES ET AL.

(November 7, 1930. Opinion and Decree.)

Bryan E. Bush, of Shreveport, attorney for plaintiff, appellee.

J. Fair Hardin, of Shreveport, attorney for defendants, appellants.

ODOM, J. This is a suit on an open account which is not disputed. The only issue raised in the lower court and the only one involved here is whether the defendant J. N. Jones is liable for the debt. His defense is that the debt was created by his wife while engaged in a separate business with which he had no connection, and that, under Act No. 132 of 1926, authorizing married women to enter into contracts and bind themselves relating to their separate and paraphernal property, without the authorization of their husbands, and article 2334 of the Civil Code (as amended by Act No. 186 of 1920), making the wife's earnings and property purchased with all funds thus derived "when carrying on a business, trade, occupation or industry separate from her husband" her separate property, the debt here involved is her debt and not a debt of the community, and she alone is bound.

Under the facts disclosed, we think defendant is liable. It is admitted that the defendant J. N. Jones and his wife were married in Caddo parish, this state, and that, from the date of their marriage down to the present time, they have lived together as husband and wife under the regime of community of acquets and gains. Mrs. Jones brought no property or funds into the marriage, nor has she acquired any during the marriage, with separate funds, by inheritance or by donation made to her particularly. Civ. Code, art. 2334. Back in 1922 or 1923, the defendant J. N. Jones established and began to run a cafe in Mooringsport, Caddo parish, and continued to operate it in his own name as the "Jones' Cafe" until 1926. He purchased all the equipment and fixtures, and there is no contention that up to 1926 it was not his business, although his wife was, during this time, in active charge thereof. She stayed in the cafe, made the purchases, and paid the bills with the funds arising from its operation.

In 1926, Mrs. Jones personally began ne-

gotiations for the lease of another building, with the view of changing the location of the cafe, but pending these negotiations, Mr. Jones purchased the building which Mrs. Jones desired to lease. Admittedly, this property fell into and became part of the community. Immediately following the purchase of the building, the cafe, including the furnishings and fixtures previously purchased and then owned by Mr. Jones or the community, was moved into it. So that at that time all the property, the building, and all equipment used in connection with the business, was community property and unquestionably the business itself belonged to the community. There is no denial of that. But, when they moved to the new location, Mrs. Jones, presumably with her husband's consent had painted on the front the sign, "Mrs. Jones' Cafe," whereas prior to that time the sign had read, "Jones' Cafe." There was no change in the management, so far as appearances indicated. Mrs. Jones stayed in the cafe, remained in charge of it, purchased supplies, and paid the bills with funds arising from its operation. All purchases when not paid for in cash were charged to "Mrs. Jones' Cafe." The items making up plaintiff's account were all for supplies used in the cafe, and were charged to "Mrs. Jones' Cafe," and plaintiff said, when questioned, that she expected Mrs. Jones to pay the account, as she was in active charge, but she assumed that the business belonged to the community, or, as she expressed it, to both.

As stated, the business was established by the defendant J. N. Jones, and without question remained his until 1926. The only testimony adduced by defendant tending to show that there was any change in the ownership of the business after that date is that which shows that the name was changed by Mrs. Jones from "Jones' Cafe" to "Mrs. Jones' Cafe," and the testimony of Mr. Jones that he had nothing to do with its management, and that he had never gotten anything out of it. Mr. Jones was called by plaintiff on cross-examination, and later took the stand in his own behalf, but gave no testimony tending to show that there was any agreement or understanding between him and his wife that there was to be any change in the ownership of the business or that the wife was to launch out into business for herself, and it is proved that the public had no notice or even intimation that there had been any change. So far as the active management was concerned, there was no change. Mrs. Jones was in active charge from 1923 down to, the date of this suit. During all this while, Jones himself was operator for the Kansas City Southern Railroad and was on duty from 4 o'clock in the afternoon to midnight; while he was off duty, he was in and about the cafe, ate there, went behind the counters and helped out during rush hours, and occasionally went into the cash drawer. People who worked in the cafe prior to and after 1926 saw no change. One witness testified that he heard defendant tell his wife after this suit was filed that she had better get out "while going was good," and that he would put some one in her place who would manage it differently. Defendant denies that he told her that, but admits that he told plaintiff that the cafe would have been sold and all debts paid if his wife had not blocked the deal by demanding all cash; and he admits also that on one occasion he went to the plaintiff to get the bills for goods sold to the cafe, as he needed them in making out his income tax return.

Our conclusion is that the business under the name of "Mrs. Jones' Cafe," was a continuation of the original one established by defendant in 1923, and that it was not the

separate enterprise of Mrs. Jones, but belonged to the community. It follows that the debt sought to be enforced is a community debt, and that this suit was properly brought against J. N. Jones, who is head and master thereof.

The judgment appealed from is accordingly affirmed, with all costs.